Bradley C. Gage, Esq., S.B. No. 117808
(brad@bradgagelaw.com)
Milad Sadr, Esq., S.B. No. 245080
(milad@bradgagelaw.com)
**BRAD GAGE LAW, APC**
23002 Victory Boulevard
Woodland Hills, California 91367
(818) 340-9252 Fax: (818) 340-9088

Attorneys for Plaintiffs,
ESTATE OF ROBERT BROWN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ROBERT BROWN, by and through its Personal Representatives, VICTORIA BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN BERNARDINO, JACKSON TUBBS, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. **UNREASONABLE SEIZURE OF PERSON - 4th AMENDMENT VIOLATION UNDER 42 USC § 1983**<br>2. **CIVIL BATTERY**<br>3. **NEGLIGENCE**<br>4. **MUNICIPAL LIABILITY**<br>5. **BANE ACT** |

## GENERAL ALLEGATIONS

1. COME NOW, ESTATE OF ROBERT BROWN, by and through its Personal Representatives, VICTORIA BROWN, who demand a jury trial and seek monetary compensation against all Defendants, as follows:

- 1 -
**COMPLAINT**

## VENUE AND JURISDICTION

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

3. Plaintiff ESTATE OF ROBERT BROWN, by and through its Personal Representatives, VICTORIA BROWN, at all times mentioned herein, was an entity residing in the City of San Bernardino, State of California. ESTATE OF ROBERT BROWN, by and through its Personal Representatives, VICTORIA BROWN, is the sister of the decedent, Robert Brown. VICTORIA BROWN, sues as the Personal Representative of the Estate of Robert Brown, as defined by Section 377.60 of the California Code of Civil Procedure, as a successor in interest, heir, and personal legal representative of the decedent to seek redress for the deprivation of the decedent's rights and for those damages that the decedent sustained and incurred before death, and the decedent would have been entitled to recover, had he lived as defined by Section 377.34 of the California Code of Civil Procedure. A true and correct copy of the Declaration of Victoria Brown is attached hereto as Ex. "1".

4. Plaintiffs are informed and believe, and thereon allege that, at all relevant times herein, Defendant, CITY OF SAN BERNARDINO (hereinafter "CITY" or "defendant CITY" or "Defendants"), was a public entity duly organized and existing under the laws of the State of California.

5. Defendants JACKSON TUBBS (hereinafter "TUBBS" or "defendant

TUBBS" or "Defendants") is a peace officer working for the City of San Bernardino Police Department ("SBPD"). At all relevant times, TUBBS was acting under color of law within the course and scope of his duties as peace officer for the SBPD. TUBBS was acting with the complete authority and ratification of his principal, Defendant CITY.

6. DOES 1-3 are peace officers working for the City of San Bernardino Police Department ("SBPD"). At all relevant times, DOES 1-3 were acting under color of law within the course and scope of their duties as peace officers for the SBPD. DOES 1-3 were acting with the complete authority and ratification of their principal, Defendant CITY.

7. Defendants DOES 4-8 are managerial, supervisorial, and policymaking employees of the SBPD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the SBPD. DOES 4-8 were acting with complete authority and ratification of their principal, Defendant CITY.

8. On information and belief, DOES 1-10 were residents of the County of San Bernardino and the Central District.

9. In doing the acts and failing and omitting to act as hereinafter described, Defendants TUBBS and DOES 1-3 were acting on the implied and actual permission and consent of Defendants DOES 1-10 and the CITY.

10. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

11. At all times mentioned herein, each and every defendant was the co-conspirator with, and/or agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

12. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

13. DOES 1-10 are sued in their individual capacity as well as representative capacities.

14. On or about May 24, 2024, Plaintiffs filed comprehensive and timely claims for damages with the CITY pursuant to applicable sections of the California Government Code. A true and correct copy of the claim is attached hereto as Ex. "2".

## FACTUAL ALLEGATIONS

15. On December 27, 2023, at approximately 0650-0700 (7 a.m.) A San Bernardino motorcycle officer believed to be Jackson Tubbs attempted to perform a traffic stop on decedent for a vehicle code infraction near 7th Street and Sierra Way in the City of San Bernardino.

16. The decedent drove to the area of the 1200 block of Pepper Tree Lane where he ran from his car and TUBBS chased him. Motorcycle officers are not supposed to get into a foot pursuit, especially on their own under the policies of San Bernardino Police Department. TUBBS failed to broadcast his location.

17. The decedent used both hands to hop a fence. At no time, did the decedent

show or point a weapon towards TUBBS or anyone else.

18. Nevertheless, TUBBS shot the decedent multiple times through a fence around the backyard of 1232 Crestview Avenue.

19. The unarmed decedent stumbled against a nearby shed and collapsed onto his knees.

20. The decedent had blood streaming from his mouth and when he tried to speak, he had agonal breathing. TUBBS put out a radio call finally and did not know where is actual location was, which is another violation of policy practice and procedures.

21. More DOES 1-3 arrived and engaged in excessive force by tackling the decedent to the ground when he posed no threat to the officers, raised both hands in surrender, could not walk, could barely talk, and bleeding out.

22. The decedent was forced to lay face down on the ground, which further encumbered his breathing.

### FIRST CLAIM FOR RELIEF
### FOR UNREASONABLE SEIZURE OF PERSON (42 U.S.C. § 1983) BY THE ESTATE OF ROBERT BROWN AGAINST DEFENDANT TUBBS

23. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

24. Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances.

25. As alleged in detail herein, on or about December 27, 2023, TUBBS shot and killed Robert Brown without provocation, good cause, or any legal justification.

   a. TUBBS was attempting to arrest the decedent for an infraction.

   b. The decedent was unarmed.

  c. The decedent did not pose a danger to TUBBS or anyone else.

  d. Deadly force was completely unnecessary. But police officers failed to utilize alternative measures readily available to them.

  e. There was NO probable cause for a reasonable officer to believe that the decedent had committed a crime involving the infliction or threatened infliction of serious physical harm or any crime.

  f. It was more than practical for the officers to give warning of the imminent use of force, but no such warnings were given. Instead, the officers decided to "shoot first and ask questions later." As such, they acted as the "judge, jury and executioner."

26. Despite the totality of the circumstances fully reflective that any force, let alone deadly force, was unnecessary, TUBBS shot and killed the decedent.

27. The decedent did not die immediately and thus he endured pain, suffering, fear and emotional distress before his death.

28. The conduct of defendants directly and legally caused the decedent's death. That death resulted in medical, hospital and surgical bills, burial and funeral expenses, loss of earnings or earnings capacity, loss of support and other damages.

29. As a direct result of the conduct of defendants, Plaintiffs have suffered with economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

30. The damages that plaintiffs suffered from also include, but are not limited to, loss of consortium, loss of companionship, care, love and affection, past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. General (non economic) damages are also sought for emotional

- 6 -
**COMPLAINT**

distress, grief, anger, fear, trepidation, and chagrin, in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees, civil penalties and fines as allowed by law, and such other damages set out during trial.

31. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants.

### SECOND CLAIM FOR RELIEF
### FOR CIVIL BATTERY
### BY THE ESTATE OF ROBERT BROWN
### AGAINST TUBBS

32. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

33. Pursuant to Cal. Government Code §§ 815.2, 815.3, Defendant CITY is liable for the acts and/or omissions of Defendant TUBBS committed in the course and scope of employment.

34. As alleged in detail herein, TUBBS shot and killed the decedent without provocation, good cause, or any legal justification. This intentional act was harmful and offensive to the decedent who did not consent to the shooting or being killed. He did not die immediately and thus he endured pain, suffering, fear and emotional distress before his death.

35. The conduct of defendants directly and legally caused the decedent's death. That death resulted in medical, hospital and surgical bills, burial and funeral expenses.

36. As a direct result of the conduct of defendants, Plaintiffs have suffered

with economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

37. The damages that plaintiffs suffered from also include, but are not limited to economic damages including without limitation, loss of past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. Non-economic or general damages are also sought for all such damages allowed by law, which include without limitation, emotional distress, grief, anger, fear, trepidation, and chagrin, loss of consortium, loss of companionship, care, love and affection in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees and such other damages set out during trial.

38. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants.

### THIRD CLAIM FOR RELIEF
### FOR NEGLIGENCE
### BY THE ESTATE OF ROBERT BROWN
### AGAINST ALL DEFENDANTS

39. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

40. The CITY is vicariously liable for the wrongful acts of Defendants DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its

- 8 -
COMPLAINT

employees within the course and scope of the employment if the employee's act would subject him or her to liability.

41. Police officers, including Defendants TUBBS and DOES 1-10, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

42. Defendants TUBBS and DOES 1-10 breached this duty of care. The actions and inactions of Defendants TUBBS and DOES 1-10 were negligent and reckless, including but not limited to:

   a. the failure to properly and adequately assess the need to use deadly force against DECEDENT;
   b. the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence;
   c. the negligent use of deadly force against DECEDENT;
   d. the failure to provide prompt medical care to DECEDENT;
   e. the use of force upon DECEDENT after he was shot;
   f. the failure to properly train and supervise employees, both professional and non-professional, including DOE POLICE OFFICERS, with respect to the use of deadly force;
   g. the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;
   h. ratification of prior acts of excessive force, or fabrication of evidence; and
   i. the negligent communication of information during the incident.

43. As a direct and proximate result of Defendants' conduct as alleged above,

and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

44. Plaintiffs bring this claim individually and as successors in interest to DECEDENT, and seek both wrongful death and survival damages under this claim.

### FOURTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY FOR VIOLATION OF CONSTITUTIONAL RIGHTS (MONELL LIABILITY) BY THE ESTATE OF ROBERT BROWN AGAINST DEFENDANT CITY OF SAN BERNARDINO

45. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

46. This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments.

47. Since 2022, Chief of Police Darren L. Goodman has been the police chief for the City of San Bernardino, and thus, final policymaker.

48. Chief Goodman exercised control and management over the City's Police Department and was the final policymakers for Defendants.

49. As police chief, Goodman promulgated policies wherein police officers were ordered and encouraged to stop, detain, arrest, forcefully seize, and/or prosecute members of our community. Defendants implemented policies, procedures and practices that deprived the decedent of his rights under the laws of the United States and the United States Constitution.

50. Defendants implemented an express policy, custom, or widespread practice

of targeting people for excessive force, rather than engaging in constitutional policing. The defendants had deliberate indifference to the violations of constitutional rights for people. Defendants had a policy to violate Federal Law and the US Constitution by deprivation of equal protection, substantive and procedural due process rights and illegal searches and seizures.

51. At all relevant times herein, plaintiffs suffered constitutional deprivations by Defendants implementing the unconstitutional policies of the defendants.

52. Chief Goodman ratified the unconstitutional actions of subordinates by continually rewarding officers for unconstitutional conduct through awards, positive evaluations, better assignments, promotions, and increased income/overtime. Thus, the policy, practice and custom of defendants resulted in violating the rights of people to be free from violating equal protection, unreasonable seizures, unlawful arrests, and excessive force. Thereafter in violation of Plaintiffs' due process rights Defendants proceeded to falsify evidence and submit false police reports as well as to delay medical treatment so that the decedent would die.

53. At the time of these constitutional violations, defendant CITY had policies in place and had ratified customs and practices which permitted and encouraged their police officers to violate the US Constitution.

54. Said policies, customs and practices also called for the City and its Police Department not to discipline, prosecute, or objectively or independently investigate known incidents and complaints of unconstitutional violations of the rights of individuals' under the Fourth and Fourteenth Amendments to the U.S. Constitution. These violations were exacerbated by defendants lack of properly training its officers in constitutional policing.

**COMPLAINT**

55. Defendant CITY was aware of and deliberately indifferent to a pervasive and widespread pattern and practice within the Police Department to violate the rights of individuals' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Said defendants failed to take any reasonable measures to correct this pattern and practice and as a result ratified the actions, and Defendants have been deliberately indifferent to the civil rights violations which resulted in death to the decedent.

56. Said customs and practices called for said defendants, by means of inaction and coverup, to encourage an atmosphere of lawlessness within the police department and to encourage their police officers to believe that engaging in illegal searches, seizures, due process violations and violations of Equal Protection was permissible, and that such conduct would be overlooked or would not result in any discipline for Defendants employees violating the civil rights of citizens demonstrating ratification of these customs and practices.

57. Said policies, customs and practices of said Defendants and each of them evidenced a deliberate indifference to the violations of the constitutional rights of Plaintiffs. This indifference was manifested by the failure to change, correct, revoke, or rescind or otherwise address said customs and practices in light of prior knowledge by said defendants and their subordinate policymakers of indistinguishably similar incidents of unjustified, unreasonable and unlawful arrests, falsification of evidence and police reports, excessive force and other constitutional violations against citizens.

58. Defendants and each of them demonstrated a deliberate indifference to the civil rights of Plaintiffs, as further evidenced by defendants ignoring the history and pattern of prior civil lawsuits alleging civil rights violations,

similar to those alleged herein, arising from such misconduct and the related payment of judgments or settlements of such suits, including those alleging improper shootings and killings without justification.

59. Deliberate indifference is also evidenced by an absence of or by maintenance of an inadequate system of tort claims tracking and by maintaining an inadequate system of officer discipline and independent and objective investigation by the City and its Police Department which failed to identify and investigate instances of false and unlawful arrests, excessive force, falsification of evidence, denial of equal protection and other acts of wrong doing towards individuals.

60. Deliberate indifference to the civil rights of victims of the Defendants' unlawful arrests and falsified evidence was also evidenced by the failure of said defendants to adequately train and more closely supervise or retrain officers and/or discipline or recommend prosecution of those officers who engaged in unconstitutional actions towards plaintiffs.

61. Other systemic deficiencies of said defendants which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the officers of the Defendants towards plaintiffs include unjustified killing, shooting and issuance of public statements exonerating officers involved in such incidents prior to the completion of investigations of wrongful arrests or that are contradicted by actual evidence.

62. Said defendants also maintained a system of grossly inadequate training pertaining to the lawful making of arrests, police ethics, the law pertaining to searches and seizures, testifying in trial and perjury, the collection of evidence, and the preparation of police reports regarding the arrests of, injuries to and killing of members of the community.

63. The foregoing acts, omissions, and systemic deficiencies are practices and

customs of said defendants as such caused, permitted and/or allowed under official sanction Defendants intentionally overlooked and ignored the rules and laws governing the unconstitutional actions towards members of our community.

64. The foregoing acts, omissions, and systemic deficiencies are practices and customs of said defendants which caused, permitted and/or allowed under official sanction said police officer defendants to believe that unconstitutional arrests would not result in any discipline of them.

65. Plaintiffs are informed and believe that, unless restrained and enjoined by this court, defendant City will continue with its unconstitutional policy towards members of our community. It is extremely likely that defendants will continue with such unconstitutional violations.

66. As a direct and legal result of the defendants actions, the plaintiffs were harmed, and are entitled to economic and non economic damages in excess of the minimum jurisdiction of this court, to attorneys fees, litigation costs, fines, penalties, interest and such other relief as the court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF THE BANE ACT BY THE ESTATE OF ROBERT BROWN**
**AGAINST ALL DEFENDANTS**

67. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

68. Defendants acted violently against the decedent to prevent him from exercising his rights under federal and state laws, e.g., freedom of bodily integrity, freedom from unlawful seizure, freedom from unlawful restraint on movement/liberty.

- 14 -
**COMPLAINT**

69. Defendants intended to deprive the decedent of his enjoyment of the interests protected by federal and state laws.
70. The decedent was harmed as were the other plaintiffs herein.
71. Defendants' conduct was a substantial factor in causing the decedent's harm.
72. The conduct of defendants directly and legally caused the decedent's death. That death resulted in medical, hospital and surgical bills, burial and funeral expenses.
73. As a direct result of the conduct of defendants, Plaintiffs have suffered with economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.
74. The damages that plaintiffs suffered from also include, but are not limited to, loss of consortium, loss of companionship, care, love and affection, past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. General damages are also sought for emotional distress, grief, anger, fear, trepidation, and chagrin, in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees and such other damages set out during trial.
75. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants. NO punitive damages are sought against the CITY of San Bernardino.

WHEREFORE, Plaintiffs pray for the following:

1. Compensation for both economic and non-economic damages suffered and to be suffered;

2. Legal and other expenses incurred by Plaintiffs;

3. Compensatory damages and nominal damages caused by deprivation of Plaintiff's constitutional rights;

4. Litigation costs;

5. Attorneys' fees, as allowed by statute;

6. Interest;

7. Civil Penalties as allowed by law.

8. Punitive damages (against the non-municipal Defendants only);

9. Any other relief or damages allowed by law, or statutes not set out above, and such further relief as this Court deems just and proper at conclusion of trial.

Dated: December 10, 2024           Respectfully Submitted,
                                   BRAD GAGE LAW, APC

                                   By: /s/ Milad Sadr
                                   Bradley C. Gage
                                   Milad Sadr
                                   Attorneys for Plaintiffs

**COMPLAINT**